## Durgin *v.* Gage.

A trip-hammer and other cumbrous articles of machinery were attached
    by an officer, in the shop where they were used, and bailed to the defend-
    ant, with the understanding that such use should continue.  In trover
    for the property, it appeared that the officer, in the street and near
    the shop, demanded the articles of the defendant, who thereupon offered
    to go at once to the shop and deliver them; but the plaintiff neither
    went with the defendant or designated any other place of delivery.—It
    was *held*, that under the circumstances of the case the shop was the
    proper place of delivery, and that there was no proof of a conversion.

This was an action of trover, brought by Jeremiah S.
Durgin against Calvin Gage, for the conversion of four
lathes, two anvils, one trip-hammer, one grindstone, and
all the tools and machinery in the shop occupied by Hiram
Gage, in Boscawen, in this county, in all of the value of
$1000.   The writ was dated June 21, 1859.   Plea, the
general issue.

Upon the trial it appeared that on the 3d day of April,
1854, the plaintiff, who was then and still is a deputy-
sheriff of this county, having in his hands a writ against
Hiram Gage, called upon him with it, and, after stating to
him what it was, inquired of him if he could give him a
receiptor for property.   Upon his replying that he could
give his brother, the defendant, the plaintiff assented to
take him, and thereupon Hiram Gage mentioned over
some of the articles which he had in his shop, and the
plaintiff took from the defendant the following receipt:

"Boscawen, April 3, 1854.

" Received of J. S. Durgin, deputy-sheriff, the goods and
chattels following, attached on writ, *John D. Riddle* v.
*Hiram Gage*, returnable to the Court of Common Pleas,
Hillsborough county: Four lathes, one trip-hammer, one
grindstone, five anvils, and all the tools and machinery in
the shop now occupied by Hiram Gage, in Boscawen, all
valued at $1000; and I hereby agree to deliver the same

to said Durgin, or order, on demand, in as good order and condition as they now are, free of charge and expense.

CALVIN GAGE."

No actual attachment of any property was made by the plaintiff, nor was any inventory thereof taken by him, but the plaintiff knew that said Hiram had in his shop, at the time, the articles specified in the receipt, with other tools and machinery connected with his business as a machinist. It appeared that after the date of the receipt the property named therein continued in the shop of said Hiram, and had been used by him in carrying on his business as it had before been used, and as it was understood by all parties it should continue to be used, and the defendant had never in any way interfered with it, and that some parts of the trip-hammer and lathes had been worn out or broken, and renewed from time to time, while a new grindstone had been substituted for the old one, so that when judgment was recovered in the action, *Riddle* v. *Hiram Gage*, and the execution placed in the plaintiff's hands, the value of the articles then in the shop of Hiram Gage, enumerated in the receipt, and of the tools and machinery connected therewith, was considerably greater than at the date of the receipt; the trip-hammer being worth twice as much as before.

To maintain the action, the plaintiff relied upon a demand of the property mentioned in the receipt, and the refusal or neglect of the defendant to deliver the same upon such demand. On this point the plaintiff testified that after he received the execution, *Riddle* v. *Hiram Gage*, some where from the 6th to the 9th day of January, 1859, he met the defendant in the street and told him he should be obliged to demand of him the property for which he had receipted; whereupon the defendant replied that the property was in Hiram's shop, and the plaintiff could have it at any time, as he was ready to deliver it to him there. He further testified, that on the 13th day of Jan-

uary, 1859, he called on the defendant at his office, about four or five rods from Hiram's shop, and tried to induce him to sign an acknowledgment on the back of the receipt, that the property had been demanded of him and he had not delivered it, but the defendant declined to do this, saying that the property was at Hiram's shop, and he would deliver it to him there, if the plaintiff would go there with him. He also testified that on the 18th day of January, 1859, he met the defendant at the railroad depot at Fisherville, a half mile or more from Hiram's shop, just as he was getting out of the cars on his return home from Concord, and demanded of him the property; that the defendant then told him the property was all in the shop, and the plaintiff could have it by going there with him after it, and that, on the evening of the same day, the defendant came to him and notified him, in the presence of witnesses, that he was ready to deliver up the property to him. He further testified, that he always understood the defendant was ready to deliver the property to him, and had never refused to deliver it.

It further appeared that the trip-hammer weighed 2000 to 3000 pounds, was fastened to the shop, in which it was operated in various ways, and was carried by a belt connected with the water-wheel of Hiram Gage's shop; that of the four lathes, all operated by belts from the water-wheel, the largest, weighing more than 3000 pounds, and the smallest about 500 pounds; that the anvils weighed some 150 pounds each, and the grindstone was run by water, and was very thick and some two feet in diameter.

Upon this and other evidence of substantially the same character, the court instructed the jury that the plaintiff could recover in this action only the value of the articles particularly specified in the writ, taking the price fixed in the receipt as the value of the whole; that the defendant, having lawfully come into possession of the property claimed in this suit, had a right to retain it until demanded

Durgin *v.* Gage.

by the plaintiff, and if, when demanded, he was ready and willing to deliver it, he was not liable in this action; but that if the defendant, after a demand of the property by the plaintiff, refused to deliver it, or unreasonably neglected to deliver it, he would be liable; that a demand of the articles sued for, to be effectual, must have been made by the plaintiff at a time and place where the defendant was bound to deliver them, and the plaintiff must have been ready then and there to receive them, if delivered; that the defendant was not bound to carry the property to the plaintiff, in order to return it, but that it was sufficient, if, having kept the property according to his contract, in some reasonable and suitable place, he was ready to deliver it up there when called for by the plaintiff, and that any mode of making the demand, which precluded the defendant from availing himself of these rights, was clearly insufficient, and that an insufficient demand was not evidence either of a breach of the receiptor's contract, or of a conversion of the property.

The jury having returned a verdict for the defendant, the plaintiff moved that the same be set aside, and for a new trial, by reason of supposed errors in the foregoing instructions of the court.

*Morrison & Stanley*, for the plaintiff.

*Minot & Mugridge*, for the defendant.

BELLOWS, J. The use of the property attached, at the place where it was taken and as it was understood it should be used, was not a conversion. Beside, as no exception appears to have been taken to the instructions of the court on that point, it is to be presumed that the instructions were right.

Upon the other point the court instructed the jury, that the defendant was not bound to carry the property to the

plaintiff, in order to return it, but that it was sufficient, if, having kept the property according to his contract, in some reasonable and suitable place, he was ready to deliver it up there, when called for by the plaintiff; and these instructions we think were correct.

The property in this case was bailed to the defendant, to be kept without compensation until called for by the plaintiff, or his order. The articles were bulky, were kept at the place where they were when attached and when delivered to the defendant, and at the place where it was understood by the parties they might be used. On a demand being made by the plaintiff, though at a place other than the place of deposit, the defendant offered at once to go to the shop with the plaintiff and deliver to him the property, but the plaintiff did not go with him. He afterwards made a similar demand, and with a similar result.

This, we think, was no evidence of a conversion, and on that point the jury were correctly instructed. A receiptor is a mere depositary without reward, and the nature of the bailment is not changed by the receipt. In *Phelps* v. *Gilchrist*, 28 N. H. 277, it is held that a demand left at the receiptor's house is not sufficient; that it should be made so that he could at once comply with it, and that he is not bound to carry the property to the sheriff. It will be observed, also, that the plaintiff made no objection to the place of delivery, nor did he designate any other, and it is by no means clear that in case he could require the property to be delivered at another place, he could charge the bailee with a conversion, without designating the place of delivery at the time of the demand—the defendant signifying his willingness to deliver it at once. It would at least be just and reasonable, that, as no time or place was expressly fixed in the contract for the delivery, but to deliver on demand, the plaintiff should accompany that demand with a designation of the place.

However this may be, we are all satisfied that, upon the general ground before mentioned, there was no error in the instructions.

The instructions that the demand must be made at the place where the defendant was bound to deliver the property, is not material, inasmuch as, upon the view we take of the law, there was no evidence of conversion, whether the demand was or was not sufficient.

There must, therefore, be

*Judgment upon the verdict.*